733 So.2d 736 (1999)
STATE of Louisiana
v.
Raynell M. JACKSON.
No. 97-KA-2220.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1999.
*737 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, Louisiana, Attorney for Defendant/Appellant Raynell M. Jackson.
Harry F. Connick, District Attorney, Charles E.F. Heuer, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Attorneys for Appellee/The State of Louisiana.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MOON LANDRIEU and Judge PATRICIA RIVET MURRAY.
PATRICIA RIVET MURRAY, Judge.
Raynell M. Jackson appeals her conviction for attempted perjury, a violation of La. R.S. § 14:(27)123, as well as the three years at hard labor to which she was sentenced. We reverse the conviction and sentence for the reasons which follow.

FACTS AND PROCEEDINGS BELOW
On December 15, 1994, Raynell Jackson appeared before an Orleans Parish grand jury in the matter of State v. Leroi Day. She testified that on October 19, 1994, she was with Timothy Berry[1] when someone she knew only as "Rocky" came up behind them and began shooting. Mr. Berry received a fatal gunshot wound to the head, but "Rocky" told Ms. Jackson he would not kill her unless "he hears anything about it [then] he's going to come back and kill me." She was questioned by police on the scene, but she did not say she could identify the killer because "Rocky" was standing across the street watching and giving her looks.
However, within the next week Ms. Jackson notified the police that "Rocky" was the shooter, and a detective presented a photographic lineup for her review. Ms. *738 Jackson was questioned before the grand jury about this process, as follows:
Q: And also you had an opportunity to meet with some detectives?
A. Yes.
Q. And they showed you some photographs?
A. Yes.
Q. Did you pick [Leroi Day] out of the photographs?
A. Yes.
Q. Did anybody tell you who to pick out ___
A. No.
Q. ___ or promise you anything?
A. No.
Leroi Day was subsequently indicted for the second degree murder of Timothy Berry.
On August 9, 1995, Ms. Jackson was called to testify at a hearing on a motion to suppress filed by Mr. Day. When asked by the prosecutor to recount her identification of the defendant, she answered:
When [the detective] came ___ when he came to bring those pictures, I remember it was late at night.... He showed me the pictures like two times. And I told him the guy that I saw wasn't in the pictures. So ___ and he showed me a picture. He said, "You're sure this one here is not him?" I was exhausted. I just say ___ he showed me that picture. And he said, "Is it this one here?" I said, "No." I said, "I'm not sure." So he say, "You want to look at them again?" And he showed them to me again. And I still wasn't sure. So he showed me a picture and he say, "This the guy right here." So I went along with him. I said, "Yeah, that's him."
On further questioning, Ms. Jackson maintained that she had selected Mr. Day's photo only because the detective indicated she should. After being instructed by the court on the definition of perjury and the possible penalties for giving "two different stories under oath," however, Ms. Jackson stated only that she had not told the grand jury about the detective's conduct. Even after reading the relevant portion of the grand jury transcript, she testified that she had no recollection of a question regarding being told which photo to pick or being promised anything for a particular selection. Ms. Jackson reiterated that the man she knew as "Rocky," who had killed Mr. Berry, was not Leroi "Rocky" Day.
A bill of information was subsequently filed in September 1995 charging that Ms. Jackson's inconsistent testimony on August 9, 1995 constituted perjury. Ms. Jackson was tried on this charge on November 18, 1996. The transcripts of her testimony before the grand jury and at the subsequent hearing were admitted into evidence, and it was established that the charges against Leroi Day had been dismissed because there was no evidence other than Ms. Jackson's identification. The detective who had presented the lineup to Ms. Jackson testified that he had done nothing to suggest which photo she should select or to coerce or influence her in any way. He did not recall either asking or being told why "Rocky" walked up and shot Mr. Berry but did not harm Ms. Jackson.
The assistant district attorney who had questioned Ms. Jackson at the grand jury hearing testified that he had previously asked her about fear of retaliation, but she expressed no fear. He stated that witnesses are never pressured to testify, and he always tries to ensure that a grand jury witness is willing to follow through "because if they're not going to then we don't have a case, there's no point in even going to the grand jury."
The assistant district attorney who was assigned to prosecute Mr. Day testified that at his initial contact with Ms. Jackson, she said they had the wrong man in jail because the detective had told her to pick out Mr. Day's picture. He asked her if she was afraid and if someone "had gotten to her in order to change her story," but Ms. Jackson told him no, denying that she *739 had been threatened. Prior to the August 1995 motion hearing, an attorney had been appointed to counsel her regarding the consequences of committing perjury, but she nevertheless recanted her prior identification.
Ms. Jackson took the stand in her own defense, and admitted that she had testified truthfully before the grand jury. She explained that she had done so because the police and prosecutor told her that her identity would remain secret, and she believed that her grand jury testimony was all that would be needed. However, two weeks later she returned to visit her family in the neighborhood where the shooting occurred "and all his [Rocky's] friends was telling me that he was looking for me." Although she was not directly threatened, members of her family were, and every time she was called to court on the matter she would encounter "Rocky" and his family. Ms. Jackson admitted that the prosecutor had offered police protection for her, and that the attorney she spoke to before the hearing had explained the need to tell the truth. However, when she was called to testify she denied that Mr. Day was the killer because the attorney appointed for her had said "we probably could get you probation if you plead guilty for perjury."
Ms. Jackson's mother testified that she was unaware her daughter had witnessed a murder until she and her husband were directly threatened by "Rocky's" cousin(s) and others. Because of this harassment and more threats, she moved the family out of the area completely. However, she did not report these threats to the police, and she admitted that no actual physical harm was done.
After the six-member jury had deliberated Ms. Jackson's fate for just over one hour, they returned to present a written question to the court: "Did she have other choices before perjury like taking the Fifth? See exhibits two and three." The court ascertained that the latter phrase was a request to see the transcripts of Ms. Jackson's prior testimony, which were furnished. In response to its question regarding Ms. Jackson's options, however, the jury was told only that "You must rely on your memory of the testimony that you've heard today from the witness stand." After an additional twenty minutes of deliberations, the jury found Ms. Jackson guilty of attempted perjury, for which she was subsequently sentenced to serve three years at hard labor. This appeal followed.

ARGUMENTS AND DISCUSSION

ERRORS PATENT
At the time of this offense, La. R.S. § 14:123 provided, in pertinent part:
Perjury is the intentional making of a false written or oral statement in, or for use in, a judicial proceeding.... In order to constitute perjury the false statement must be made under sanction of an oath or an equivalent affirmation, and must relate to matter material to the issue or question in controversy.
It is a necessary element of the offense that the accused knew the statement to be false; but an unqualified statement of that which one does not know or definitely believe to be true is equivalent to a statement of that which he knows to be false.
Whoever commits the crime of perjury shall be punished as follows:
(1) When committed on a trial for any felony, by imprisonment at hard labor for not more than ten years;
(2) In all other cases by a fine of not more than one thousand dollars, or by imprisonment, with or without hard labor, for not more than five years, or both.
The suggested language for a bill of information charging perjury recognizes the distinction between the penalty provided for perjury in a felony case, as opposed to misdemeanor or civil cases, as follows:
A.B. committed perjury on the trial of C.D. for a felony (or on the trial of C.D. *740 for a misdemeanor; or ... at a _______ hearing; as the case may be) by testifying as follows: _____________ (set forth the testimony).
La.Code Crim. Proc. art. 465 A(36).
In the instant case, the bill of information charged only that Ms. Jackson "committed the offense of PERJURY in that on December 15, 1994, after taken [sic] an oath required by law she testified to facts material to the issue in controversy and thereafter on August 9, 1995, [she] testified inconsistently with her former sworn testimony...." The bill did not specify whether she was charged under subparagraph (1) or (2) of the statute, and there was no recitation of the purported false testimony, as provided in Article 465 A(36). The title page of the information indicated Ms. Jackson was charged with a violation of R.S. § 14:124,[2] but the minute entries and jury instructions at trial reflect that she was prosecuted under § 14:123.
Although these errors are apparent on the face of the record, Ms. Jackson has not asserted that she was misled concerning the basis for the charge against her or that she was prejudiced in preparing her defense. Criminal Procedure article 464 specifies that an error in the statutory citation on a bill of information does not necessitate reversal unless the defendant establishes that prejudice resulted, and the failure to set forth alleged false testimony in a perjury bill was rejected as a basis for reversal under similar circumstances in State v. Randolph, 334 So.2d 687 (La. 1976). In the absence of any apparent or alleged prejudice, we find that the deficiencies in this bill of information do not constitute reversible error.

ASSIGNED ERRORS
Ms. Jackson contends that her trial counsel was ineffective for failing to request that the jury be charged regarding the defense of justification under La. R.S. § 14:18, which provides in pertinent part:
The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
* * * * *
(6) When any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed....
In support of her argument, Ms. Jackson claims that her own testimony as well as her mother's clearly establish that she "committed perjury only because her life and the lives of her family members were being threatened." She notes that this supporting evidence was admitted without objection and was emphasized in her attorney's closing argument, suggesting that the failure to ask for the applicable jury charge was not a tactical decision, but a prejudicial error. The extent of this prejudice is demonstrated, she asserts, by the jury's question during deliberations, which indicates that the testimony concerning threats and duress was found credible and possibly persuasive. Considering that trial counsel failed to request a special charge even after the jury asked about her "other choices before perjury," Ms. Jackson maintains that her conviction should be reversed and a new trial ordered.
The State argues, however, that an instruction regarding justification was not required because there was no evidence suggesting that the threats were made by a person who was "present and [who] would immediately carry out the threats," *741 as expressly required by § 14:18(6). Because all elements of the justification defense were not established by the evidence, the State maintains that counsel's failure to request such a jury charge was neither erroneous nor ineffective, and thus provides no basis for reversal of the conviction.
Although a claim of ineffective assistance of counsel is normally raised in an application for post-conviction relief, this court may address the merits of the claim when the record on appeal is sufficient. State v. Seiss, 428 So.2d 444, 449 (La.1983); State v. Lavigne, 95-0204, p. 13 (La.App. 4th Cir.5/22/96), 675 So.2d 771, 779-80, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140. Such a claim is assessed by the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brooks, 94-2438 (La.10/16/95), 661 So.2d 1333 (on rehearing). In order to prevail, the defendant must not only show that counsel's performance was deficient, but also that she was prejudiced by the deficiency. Brooks at p. 6, 661 So.2d at 1337. The defendant must prove both elements to establish that her attorney was so ineffective as to require reversal. State v. Hongo, 96-2060, p. 5 (La.12/2/97), 706 So.2d 419, 422.
Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland at 686, 104 S.Ct. at 2064. To carry this burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693, 104 S.Ct. at 2068. However, if an alleged error results from a reasonable strategic decision, it does not establish ineffective assistance of counsel. State v. Brooks, 505 So.2d 714, 724(La.), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
Under Article 802 of the Code of Criminal Procedure, the trial court is required to give a requested instruction as to the law regarding any defense which could reasonably be inferred from the evidence. State v. Jackson, 450 So.2d 621, 632 (La. 1984); State v. Felo, 454 So.2d 1150, 1162 (La.App. 4th Cir.1984), writ denied, 488 So.2d 686 (La.1986). Although the State argues that the defense of justification cannot be asserted absent a threat of immediate harm at the time Ms. Jackson committed perjury, i.e., in the courtroom, we do not find the law so limited.
The statutory defense of justification is a codification of the legal doctrine of necessity, which generally provides that the existence of extenuating circumstances will defeat criminal culpability. See State v. Recard, 97-754, pp. 5-7 (La.App. 3d Cir.11/26/97), 704 So.2d 324, 327-29, writ denied, 97-3187 (La.5/1/98), ___ So.2d ___, 1998 WL 234688, and authorities cited therein. As the Third Circuit has pointed out, this doctrine has been applied under circumstances other than those enumerated in § 14:18, Recard at 6-7, 704 So.2d at 328, and has been recognized as providing a defense in any case in which it is not expressly prohibited, State v. Blache, 480 So.2d 304, 308 (La.1985). This is in accord with the language of the first paragraph of § 14:18, which specifies that the defense of justification is applicable for any crime.
While § 14:18 includes an enumeration of circumstances under which the defense may be claimed, it does not state that justification can be claimed only under those enumerated situations. In State v. Barnes, 489 So.2d 402 (La.App. 5th Cir.), writ denied, 494 So.2d 1174 (La.1986), for example, a woman accused of cashing worthless checks was permitted to present evidence of her husband's physical compulsion to commit the crimes, and the jury was instructed as to the elements of the justification defense, even though the husband *742 had not been physically present at all relevant times. Instead, his absence from the scene was merely one of several factors the appellate court noted in affirming the jury's rejection of her defense.[3]
In this case, as in Barnes, there is no evidence that someone with an apparent ability to immediately carry out Mr. Day's alleged threats was present in the courtroom when Ms. Jackson testified falsely. Nevertheless, we find that under these facts, Ms. Jackson could escape criminal liability if the jury believed that she acted "under a duress of circumstances to protect life or limb or health in a reasonable manner and with no other acceptable choice," Recard at 5, 704 So.2d at 328, quoting BLACK'S LAW DICTIONARY 1030 (6th ed.1990). As the Supreme Court explained in State v. Miller, 338 So.2d 678, 681 (La.1976), an instruction on justification must be given whenever the defense is arguably supported by the evidence presented at trial because "the question is not what the judge believed the evidence proved, or even what view this Court has of the evidence. The question is, instead, what the jury would believe the evidence established if they had been instructed on the law of justification." See also State v. Lentz, 306 So.2d 683, 686 (La.1975); State v. Youngblood, 235 La. 1087, 1093, 106 So.2d 689, 691 (1958). We thus find that on the evidence presented here, a jury charge on this defense would have been appropriate had Ms. Jackson's trial counsel requested it. La.Code Crim. Proc. art. 802.
Nothing in the record before us suggests that trial counsel's failure to request an instruction on justification was strategic. Testimony to support the defense was presented without objection, and Ms. Jackson's attorney strenuously argued in closing that "fear is a defense to change your testimony."[4] As we have noted, neither the language of R.S. § 14:18 nor the jurisprudence thereunder prohibits the assertion of justification as a defense to a prosecution for perjury, yet there is no indication that defense counsel requested any special jury charges in the case. On these facts, we must conclude that the attorney's deficiency was a significant procedural error rather than a tactical decision.
In addition, it appears reasonably probable that had the jury been instructed regarding the law of justification, the outcome of the trial would have been different. Not only did the jurors specifically inquire whether Ms. Jackson might have had other options in reacting to the threats against herself and her family, but they returned a verdict of attempted perjury despite her admission that she had testified falsely in court. A failure to provide a jury instruction is prejudicial where, without the applicable charge, the jury is unable to understand that if the omitted conditions have been met, the defendant cannot be found guilty as charged. State v. Williams, 606 So.2d 1387, 1390 (La.App. 2d Cir.1992). Because the jury in this case was not instructed that Ms. Jackson could be excused from criminal liability if they found she had acted reasonably "under a duress of circumstances ... and with no other acceptable choice," they were unable to return a verdict of not guilty. Therefore, her attorney's error had a prejudicial effect and constituted *743 ineffective assistance of counsel under Strickland v. Washington, supra, and Ms. Jackson's conviction for attempted perjury must be reversed.
Although we thus find that a new trial is required in this matter, there is an additional assignment of error that must be addressed. Ms. Jackson contends that if she is being prosecuted for violating subsection (1) of § 14:123, then she should have been tried by a jury of twelve, rather than six. La. Const. art. I, § 17; La. Code Crim. Proc. art. 782. In the alternative, she asserts that because subsection (2) of § 14:123 sets a maximum sentence of five years, her sentence of three years for an attempt under that subsection is illegal and must be vacated as excessive. The State responds that the record "clearly" establishes that Ms. Jackson was charged only with the lesser offense, i.e., a violation of § 14:123(2), and concedes that the sentence imposed exceeds the statutory limits.
In view of the State's concession regarding the invalid sentence imposed relative to the charged offense, we agree that if convicted upon remand, Ms. Jackson's sentence must be within the limits specified in R.S. § 14:123(2), rather than under subsection (1) of the statute.

CONCLUSION
For the reasons assigned, Ms. Jackson's conviction is reversed, her sentence is vacated and the matter is remanded for retrial.
REVERSED AND REMANDED.
NOTES
[1] The name "Timothy Barra" is used in the grand jury transcript.
[2] § 14:124 defines perjury to include inconsistent statements made under circumstances other than those criminalized in § 14:123.
[3] Although the Fifth Circuit also found "that the defendant failed to meet her burden of proof as to the defense of compulsion," Barnes at 407, this court has held, in State v. Fluker, 618 So.2d 459, 463 (La.App. 4th Cir. 1993), that the State bears the burden of disproving a claim of justification or other exculpatory circumstances.
[4] Compare these facts to those in State v. Thomas, 27,507 (La.App.2d Cir.12/6/95), 665 So.2d 629, writ denied, 96-0119 (La.4/8/96), 671 So.2d 333, where the failure to request a jury charge was found to have been strategic because counsel neither argued the issue to the jury nor presented any evidence to support the defendant's vague testimony concerning justification.