Judge Joy Cossich Lobrano
hOn August 29, 2013, defendant John Chambers (“Defendant”) and his co-defendant, Kenneth Halley (“Halley”) were charged with the April 5, 2005, second-degree murder of Joseph Luden (“Victim”).[1] After a three-day jury trial, Defendant and Halley were both found guilty as charged on December 9, 2015.
Defendant filed a Motion for New Trial on January 8, 2016, and a Motion for Post-Verdict Judgment of Acquittal on January 15, 2016. The district judge denied both motions on January 15, 2016, and sentenced Defendant to life imprisonment without benefit of parole, probation or suspension of sentence, with credit for time served. Immediately after sentencing, Defendant filed a Motion to Reconsider Sentence, which was denied, and a Motion for Appeal, which was granted. Defendant now appeals his conviction and sentence, raising four counseled and two pro se assignments of error. Finding no reversible error, we affirm Defendant’s conviction.
^STATEMENT OF FACT
On the morning of April 5, 2005, Detective Ernest Rome[2] (“Det. Rome”) of the New Orleans Police Department (“NOPD”) responded to a report of a homicide in the 2300 block of Alabo Street. When he arrived on the scene, Det. Rome observed Victim, with apparent gunshot wounds, lying in an alley next to a house. As lead investigator, Det. Rome instructed officers to secure the crime scene and directed Crime Lab technicians in photographing[3] and processing the scene for evidence. Emergency Medical Services arrived, and a physician riding with the medical technicians pronounced Victim dead at the scene. Det. Rome and other officers canvassed the neighborhood for witnesses and evidence but found neither.
Later that day, two witnesses[4]—R.R. and E.M.—met with Det. Rome at the *646 police station. As a result of the statements and identifications they gave, Det. Rome obtained arrest warrants for Halley and Defendant as well as search warrants for their residences, both of which were on Deslonde Street. The defendants were arrested the day after the shooting; however, no evidence was obtained from either residence. Because pertinent witnesses subsequently refused to testify, no charges were filed at that time.
According to the trial testimony of Gray-mond Martin, First Assistant District Attorney (“A.D.A. Martin”), the Orleans Parish District Attorney’s office reviewed the case again in 2013, further investigation was conducted, and witnesses were | slocated. The case was then presented to a grand jury which returned an indictment against Defendant and Halley.
At trial in December of 2015, forensic pathologist Dr. Richard Tracy (“Dr. Tracy”) with the Orleans Parish Coroner’s Office testified that Victim suffered two gunshot wounds. One bullet entered the front of Victim’s body and exited through his back, and the second bullet entered Victim’s right side, passing through his body and exiting on the left side. One bullet struck the heart, causing massive, fatal, internal bleeding. The other bullet went through Victim’s right lung.
The State presented the testimony of R.R., one of the witnesses who previously gave a statement to Det. Rome in 2005. R.R. testified that he lived in the Lower Ninth Ward on Alabo Street most of his life. He and Victim were neighborhood friends, and he knew Halley and met Defendant through Halley. Recounting the day Victim was killed, R.R. testified that his girlfriend dropped him off at his grandmother’s house on Alabo Street. R.R. then said he could not remember any particulars of the shooting. He stated that he was testifying at the trial involuntarily and only because he had been subpoenaed and arrested. R.R. acknowledged that he was at the scene of the shooting and went to the police station after the shooting, but stated that he did not remember anything that happened after Victim was shot.
Without objection, the State played the recording of R.R.’s statement in which he said that as he and others sat together on a porch in the 2300 block of Alabo Street on April 5, 2005, Victim approached and told them he had beaten up “Lloyd” at Wagner’s Market. About ten minutes later, Halley, Defendant, M.M., Land “Lloyd” drove up in a blue Explorer, which was owned by L.C.’s mother.[5] The vehicle rode past R.R., circled the block and then stopped in front of the house where he was located. Halley, seated in the front passenger seat of the Explorer, jumped from the vehicle with an AK-47 and shot Victim once. As Halley re-entered the Explorer, R.R. shouted to the vehicle’s occupants to leave the neighborhood. Next, Defendant, who was driving the Explorer, stepped out of the vehicle and shot Victim with an AK-47. R.R. called 911. When the police arrived, R.R. directed them to Victim’s body and related the facts of the incident. Victim died on the scene. R.R. identified a picture of Halley as one of the shooters, noting Halley had eight gold teeth.
Continuing his statement, R.R. described Defendant as a tall, thin, red male with a gold plate in his mouth. R.R. said *647 Defendant lived in a black and white house on Deslonde Street. R.R. added that he feared for his life if the police did not arrest Defendant, Halley, M.M. and “Lloyd.”
Next, the State called E.M., who testified he lived in the Ninth Ward his entire life, knew Halley and Defendant and considered Victim to be a neighborhood friend. E.M. corroborated R.R.’s statement about the circumstances of the shooting. He reported that Halley stepped out of a two-door, blue Explorer and shot Victim once with a rifle, causing everyone to run. When Halley got back in the Explorer, it moved forward a bit and stopped. As E.M. was walking back to the scene, he testified he heard a second shot and observed Defendant running back to the Explorer, armed with the same rifle previously used by Halley. E.M. left the scene of the shooting and drove to the Fifth District Police Station where he gave a|fistatement of the events, specifically stating that both Halley and Defendant shot and killed Victim.
A.M. testified that Defendant, Halley and he were childhood friends from the Ninth Ward. A.M. sent a letter to the NOPD from a federal penitentiary in Tucson, Arizona, reporting that he knew details about the shooting of Victim. A.M. testified that when he was in jail in April or May of 2005, he was in the medical section of Orleans Parish Prison at the same time as Defendant. At that time, Defendant told A.M. that he was in prison for shooting Victim after Victim started a fight. Shortly after the fight, both Halley and Defendant drove through the neighborhood, searching for Victim. When they spotted Victim, they jumped out of a Ford Explorer and took turns shooting him with an AK-47.
A.M. denied seeing any news reports about the shooting and said the only information he received about the crime came directly from Defendant. Although A.M. also saw Halley at the time he spoke with Defendant, Halley did not mention the shooting. A.M. identified both Defendant and Halley at trial. He also testified he was neither promised nor expected any consideration from the federal government or the State for his testimony.
In support of A.M.’s testimony, the State called Blake Arcurie (“Arcurie”), General Counsel Risk Manager with the Orleans Parish Sheriffs Office, who testified he kept all inmate records for the Sheriffs Office. He reviewed the lock-up records of Halley, Defendant and A.M. for April and May of 2005. According to the inmate location inquiry Arcurie ran on those individuals, they were all housed in Orleans Parish Prison during that time period.
^ERRORS PATENT
A review for errors patent on the face of the record reveals one. The record in this appeal contains the front, but not the back of the indictment.
La. C.Cr.P. art. 382(A) provides in part that a prosecution of an offense punishable by death or life imprisonment, as in this case, shall be instituted by grand jury indictment. See La. R.S. 14:30.1 (B) (“Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.”) Furthermore, the indictment must have been indorsed “a true bill,” signed by the grand jury foreperson, and returned to the district court in open court. See La. C.CrJP. art. 383.
Although the copy of the indictment included in this record does not contain the reverse side, which would necessarily display the proper indorsement and signature, the trial court minutes and the list of the grand jury return of indictments in the *648 record indicate the indictment was returned as a “true bill,” in open court and properly signed by the foreperson of the Grand Jury. Thus, we find this patent error to be harmless.
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, Defendant argues the insufficiency of the evidence to support his conviction.
The Louisiana Supreme Court has recently explained:
In reviewing the sufficiency of the evidence to support a conviction, this court has recognized that an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). State v. Tate, 01-1658 (La. 5/20/03), 851 So.2d 921, 928. Under this standard, an appellate court “must |7determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” Tate, 851 So.2d at 928. In applying this standard, a reviewing court is not permitted to second guess the rational credibility determinations of the fact finder at trial, nor is a reviewing court required to consider the rationality of the thought processes employed by a particular fact finder in reaching a verdict. State v. Marshall, 04-3139 (La. 11/29/06), 943 So.2d 362, 367. It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Stowe, 635 So.2d 168, 171 (La. 1994).
State v. Kelly, 2015-0484, pp. 3-4 (La. 6/29/16), 195 So.3d 449, 451.
Additionally, “[t]he testimony of a single witness, if believed by the trier of fact, is in most cases sufficient to support a conviction.” State v. Watkins, 2013-1248, p. 14 (La.App. 4 Cir. 8/6/14), 146 So.3d 294, 303 (citing State v. Wells, 2010-1338, p. 5 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306). “Conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency.” State v. Jones, 537 So.2d 1244, 1249 (La. App. 4 Cir.1989). Moreover, when evaluating circumstantial evidence, the trier of fact must consider the circumstantial evidence in light of the direct evidence, and vice versa, and must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. State v. Spears, 2005-0964, p. 3 (La. 4/4/06), 929 So.2d 1219, 1222 (quoting State v. Chism, 436 So.2d 464, 469 (La. 1983).
Defendant was convicted of second-degree murder in violation of La. R.S. 14:30.1. Second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow | Shis act or failure to act.” La. R.S. 14:10(1). Additionally, specific intent may be inferred from the circumstances of the offense and from the defendant’s own conduct. State v. Amos, 2015-0954, p. 12 (La.App. 4 Cir. 4/6/16), 192 So.3d 822, 830 (citing La. R.S. 14:10(1); State v. Weary, 2003-3067, p. 11 (La. 4/24/06), 931 So.2d 297, 311). The determination of specific intent is a question of fact for the jury. Amos at p. 12, 192 So.3d at 830 (citing State v. Ordodi, 2006-0207, p. 11 (La. 11/29/06), 946 So.2d 654, 661).
*649 Applying these legal principles to the evidence in this case, a rational trier of fact could have concluded the State carried its burden of proving Defendant acted with specific intent to kill or inflict great bodily harm.
Eyewitness R.R. admitted he spoke to an officer at the police station the day of the shooting. However, he claimed he did not remember why he went to the station or what he spoke to the officer about and also denied ever having identified Defendant or Halley as the men he saw shoot Victim. In response, the State played R.R’s statement that had been recorded by Det. Rome on the day of the shooting. The recorded statement provided R.R.’s name, address and social security number; indicated he grew up in the Ninth Ward; and knew Defendant from that neighborhood. R.R. recalled sitting with friends on the porch of a house in the 2300 block of Alabo Street, when Victim announced he had gotten into a fight with “Lloyd.” Shortly thereafter, R.R. reported that he observed Defendant and Halley arrive in a blue Ford Explorer, exit the vehicle, and in succession, shoot the victim with an AK-47 assault rifle.
When investigating officers arrived on the scene, R.R. directed them to the body and detailed the events leading up to the shooting. R.R. described Defendant as a tall, thin, red male, with a gold plate in his mouth and said Defendant lived in |8a house on Deslonde Street. R.R. also identified Halley from a police photo. Although Defendant argues that the jury could not have used R.R.’s trial testimony “to form the basis of a conviction,” the jury reasonably could have rejected R.R.’s trial testimony where he claimed to have no memory of the incident yet credited his earlier, recorded statement where he specifically identified Defendant as the individual who fired the second shot that struck Victim.
In addition, the jury listened to E.M. recount the facts of the shooting. Although E.M. could not say he actually witnessed Defendant shoot Victim, he reported that he saw Halley shoot the victim and return to the Ford Explorer. Immediately after hearing a second shot, E.M. observed Defendant, armed with the assault rifle, running away from Victim and getting into the Ford Explorer. Thus, the jury could have reasonably inferred from this circumstantial evidence that Defendant was responsible for the second shot that struck Victim.
Finally, the jury also heard A.M. testify that he and Defendant were childhood friends, who grew up in the Ninth Ward. A.M. testified regarding the incident in 2005 whereby Defendant admitted his involvement in the murder of Victim while they were both in the medical section of Orleans Parish Prison, specifically noting that Defendant admitted he shot Victim with an AK-47. Defendant argues that it was irrational for the jury to accept AM.’s testimony as it was “uncorroborated” and “incredible.”
The jury heard the testimony, observed the demeanor of the -witnesses and credited the State’s case. Evaluating the jury’s determinations regarding -witness credibility is beyond the scope of an appellate court’s review. Kelly, 2015-0484, pp. 3-4, 195 So.3d at 451. “The determination of credibility is a question of fact within the sound discretion of the trier of fact and will not be disturbed unless 110clearly contrary to the evidence.” State v. Richards, 2011-0349, p. 9 (La.App. 4 Cir. 12/1/11), 78 So.3d 864, 869 (citing State v. Vessell, 450 So.2d 938, 943 (La. 1984)). “Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’ testimony, if believed by the fact finder, is sufficient to support a factual conclusion.” State v. Rapp, 2014-0633, pp. 6-7 (La.App. 4 Cir. 2/18/15), 161 So.3d 103, *650 108 (citing State v. Marshall, 2004-8139, p. 9 (La. 11/29/06), 943 So.2d 362, 369).
After reviewing all the evidence in the light most favorable to the prosecution, it was not unreasonable for the jury to conclude beyond a reasonable doubt that Defendant was guilty of the second degree murder of Victim. This assignment has no merit;
ASSIGNMENTS OF ERROR NUMBERS 2 AND 3
In his second and third assignments of error, Defendant contends the trial court erred by denying his Motions for a New Trial and Post-Verdict Judgment of Acquittal.
La. C.Cr.P. art. 851 provides, in pertinent part:
Grounds for new trial
A. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:
(1) The verdict is contrary to the law and the evidence.
La. C.Cr.P. art. 821 provides:
Motion for post verdict judgment of acquittal
1 t]A. The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post-verdict judgment of acquittal must be made and disposed of before sentence.
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
C. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
D. If a post verdict judgment of acquittal is granted or if a verdict is modified, the State may seek review by invoking the supervisory jurisdiction of or by appealing to the appropriate appellate court.
E. If the appellate court finds that the evidence, viewed in a light most favorable to the State, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
The trial judge has much discretion in ruling on a motion for a new trial and, upon review, an appellate court may only set aside the judgment upon a finding that the trial judge exercised his discretion in an arbitrary manner. State v. Hammons, 597 So.2d 990, 994 (La. 1992); State v. Lewis, 2005-0973, pp. 3-4 (La.App. 4 Cir. 5/24/06), 943 So.2d 1100, 1102.
Based on our finding, relative to Assignment of Error Number 1 herein, that the evidence, viewed in a light most favorable to the State, supports Defendant’s conviction of second degree murder, the jury’s verdict is not contrary to the law and evidence as required to justify the granting of a motion for new trial. Thus, the district court did not err in denying said motion. Additionally, Defendant cannot meet the requirement of demonstrating insufficient evidence under La. C.Cr.P. art. 821 (B); thus, the district court did not err *651 in denying Defendant’s post verdict judgment of acquittal. We therefore find no merit to Defendant’s Assignments of Error Numbers 2 and 3.
¡^ASSIGNMENT OF ERROR NUMBER 4
In his fourth assignment of error, Defendant complains the district court erred by admitting R.R.’s recorded statement at trial. Defendant argues the statement should not have been admitted because Det. Rome was not recalled to the stand to authenticate or identify the recording before it was played for the jury.
First, it is noted that no objection was raised to the admission of R.R.’s audio statement or the transcript of that statement at trial. Louisiana’s Code of Evidence provides: “Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [w]hen the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection...” La. C.E. art. 103(A)(1).[6] Thus, in order to preserve for review an alleged error in a ruling admitting evidence, counsel must make known to the court the specificity of the ground for its exclusion and must do so in a timely fashion. Having failed to do so, Defendant is barred from raising the issue for the first time on appeal. State v. West, 419 So.2d 868, 876 (La. 1982) (new ground for objection cannot be presented for the first time on appeal); State v. Frank, 257 La. 912, 244 So.2d 830, 831-32 (1971) (ground for objection to admissibility of evidence raised for the first time on appeal will be disregarded by the court.)
Even if an objection was properly made, we find that the evidence offered by the State was “sufficient to support a finding that the matter in question [the challenged evidence] is what its proponent claims.” La. C.E. art. 901(A). Thus, we find no evidence that the district court abused its discretion by admitting the | ^recording. See State v. Wright, 2011-0141, pp. 10-11 (La. 12/6/11), 79 So.3d 309, 316 (a trial court’s ruling on the admissibility of evidence is reviewed for an abuse of discretion). For evidence to be admitted at trial, it must be identified and authenticated. See State v. Magee, 2011-0574, p. 41-42 (La. 9/28/12), 103 So.3d 285, 315-316. The testimony of a witness with personal knowledge may provide the authentication of evidence required for its admission. Id, (citing La. C.E. art. 901 (B)(1)). “[Identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case.” Magee, 2011-0574 at p. 42, 103 So.3d at 315-316. “[T]he trial judge must [then] determine if the item offered is sufficiently authentic so as to warrant its admission,” State v. Norah, 2012-1194, p. 31 (La.App. 4 Cir. 12/11/13), 131 So.3d 172, 192 (citation omitted). Evidence must be authenticated by a showing “sufficient to support a finding that the matter in question is what its proponent claims.” Id, (citing La. C.E. art. 901 A).
At trial, Det. Rome testified R.R. gave him a recorded statement the day of the shooting in which R.R. detailed the facts of the crime and identified Defendant and Halley as the men he saw shoot the victim. Det. Rome identified a copy of the receipt he received from NOPD Central Evidence and Property Division upon his depositing of the cassette recording of R.R.’s statement.
Next, the prosecutor called R.R. to testify. The prosecutor elicited R.R.’s date of *652 birth, social security number and address. R.R. then proceeded to testify he was on the scene when the victim was shot. Further, he acknowledged he went to the police station on the day of the shooting and spoke to law enforcement, telling them “here and there” what happened on the day of the shooting, although he denied remembering what he specifically told them.
14At the conclusion of R.R.’s direct examination, the prosecutor played the audio-recorded statement. She then asked R.R. if he was listening as the statement was played for the jury. When he responded affirmatively, the prosecutor asked R.R. if the social security number, date of birth and address given in the recorded statement matched the corresponding biographical information he supplied during his direct testimony. R.R. confirmed the information on the recording was correct and identical to the information supplied during his trial testimony.
The defense did not produce any evidence to suggest the State tampered with, manipulated or altered the recording of R.R.’s statement.
Considering R.R.’s testimony and the State’s showing that the biographical information given by R.R. at trial matched the corresponding information provided in the recorded statement in question, plus the absence of proof of manipulation/tampering of the recording by the State, the recording was sufficiently identified as the statement R.R. gave to Det. Rome, thereby rendering the recording competent, admissible evidence. La. C.E. art. 901(A). This assignment of error is without merit.
PRO SE ASSIGNMENT OF ERROR NUMBER 1
In his first pro se assignment of error, Defendant raises a myriad of claims, all of which assert that his trial counsel was ineffective for failing to make objections at various points during the course of his trial.
This court set forth the applicable jurisprudence regarding raising issues of ineffective assistance of counsel on direct appeal in State v. Rubens:
“As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted.” State v. Howard, 98-0064, p. 15 (La. 4/23/99), 751 So.2d 783, 802. However, where the record is sufficient, the claims may be | ^addressed on appeal. State v. Bordes, 98-0086, p. 7 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147. Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brooks, 94-2438, p. 6 (La. 10/16/95), 661 So.2d 1333, 1337 (on rehearing); State v. Robinson, 98-1606, p. 10 (La.App, 4 Cir. 8/11/99), 744 So.2d 119, 126. In order to prevail, the defendant must show both that: (1) counsel’s performance was deficient; and (2) he was prejudiced by the deficiency. Brooks, supra-, State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741. Counsel’s performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Ash, p. 9 (La. App. 4 Cir. 2/10/99), 729 So.2d 664, 669. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel’s deficient performance the re- *653 suit of the proceeding would have been different; “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236.
State v. Rubens, 2010-1114, pp. 58-59 (La. App. 4 Cir. 11/30/11), 83 So.3d 30, 66-67.
Additionally, “judicial scrutiny of counsel’s performance must be highly deferential.” Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. A reviewing court does “not sit to second-guess strategic and tactical choices made by trial counsel.” State v. Small, 2013-1334, p. 15 (La.App. 4 Cir. 8/27/14), 147 So.3d 1274,1284. Importantly, if an alleged error falls “within the ambit of trial strategy” it does not establish ineffective assistance of counsel. State v. Falg-out, 2015-0953, p. 26 (La.App. 4 Cir. 8/24/16), 198 So.3d 1232, 1246 (citing State v. Barnes, 2012-1283, pp. 18-19 (La.App. 4 Cir. 10/2/13), 126 So.3d 606, 617 (internal citation omitted).
Defendant first argues that counsel’s ineffectiveness was evident when he failed to object to hearsay testimony. Defendant complains that counsel should not have allowed the testimony of the State’s witness, Blake Arcurie (“Arcurie”). | ^Defendant argues Arcurie’s testimony was hearsay because he was not the author of the inmate records about which he testified at trial.
Hearsay is “an out-of-court statement offered to prove the truth of the matter asserted” which is “generally inadmissible unless it falls within one of the exceptions established by law.” Magee, at p. 42, 103 So.3d at 316; La. C.E. arts. 801(C) and 802.
At trial, Arcurie testified he was the General Counsel Risk Manager for the Orleans Parish Sheriff’s Office, and as such, his duties included being custodian of the Sheriffs Office records. He testified the records were compiled in the normal course of business, and he testified to their reliability and authenticity. Defendant does not point to an out-of-court statement made by Arcurie which was offered to prove the truth of a matter asserted nor does he provide a basis for counsel to have objected. Therefore, he cannot establish that his counsel’s failure to object was in error or prejudicial to his case. This claim is meritless.
Defendant also points out that Dr. Tracy, a pathologist and part-time consultant with the Orleans Parish Coroner’s office who autopsied Victim’s body, testified that Dr. Minyard, the Parish Coroner, classified Victim’s death as a homicide. Defendant argues that because Dr. Minyard did not testify at trial, Dr. Tracy’s reference to Dr. Minyard’s classification of Victim’s death constituted inadmissible hearsay evidence, to which defense counsel should have objected.
Initially, there is nothing in the record to suggest that counsel’s failure to object was error, and even if it were, Defendant cannot show he suffered any prejudice as a result. Dr. Tracy autopsied Victim’s body and testified Victim’s wounds displayed no stippling to suggest the gunshots were delivered at close range, thus precluding the assertion of suicide or accidental shooting. Dr. Tracy |17testified one of the bullets “passed through the [victim’s] heart, widely opening up the interior of the heart, causing internal bleeding ... [which was] immediately fatal.” He further reported that there was a discrepancy between his report and the cover sheet which was added when the Coroner’s Office classified the cause of death. The cover sheet of the report indicated that two bullets were retrieved from Victim’s body. Dr. Tracy indicated that he disagreed because he found *654 that the bullets actually exited the body. The jury heard about the discrepancy in the report. Based upon the sum of the evidence offered at trial that points to Victim’s death as a homicide, Defendant is unable to establish that his attorney erred in failing to object, nor does he establish any resulting prejudice from the admission of Dr. Tracy’s testimony indicating that the Coroner classified the death as a homicide.
Next, Defendant claims counsel was ineffective because he failed to object to the district judge’s instructing of State’s witnesses R.R. and E.M. in chambers that they were not to refer to another pending case against Defendant, one involving the manslaughter of a police officer. Defendant characterizes the prohibited testimony as either Brady material or as impeachment evidence that could have been used against R.R. and E.M.
Brady material is any evidence which is “exculpatory or fit for impeachment use and is material to guilt or punishment.” State v. Lacaze, 2016-0234 (La. 12/16/16), 208 So.3d 866, 864-65 p. 6, 2016 WL 7335789 at *11-12. Defendant does not explain how allowing testimony of his involvement in a separate manslaughter case would have been exculpatory to him in this case or how that evidence could |ishave cast doubt on the credibility of R.R. and E.M.[7] Conversely, had the evidence been admitted, Defendant would arguably have a claim of ineffective assistance of counsel based on the introduction of prejudicial “other crimes” evidence. Thus, Defendant fails to show the requisite error of counsel or prejudice as a result of counsel’s alleged error required to support his Strickland claim of ineffective assistance.
Defendant next argues his counsel failed to protect his Sixth Amendment right of confrontation when he did not object to the testimony provided by A.M. Under direct examination, A.M. testified he wrote a letter to the NOPD advising he had information about several murders which occurred in the city. However, under cross examination, A.M. explained he did not actually write the letter, but instead dictated the letter to another inmate, Q.W. The basis of Defendant’s argument is that his attorney was unable to cross examine Q.W. because Q.W. did not testify at trial. Once again, Defendant fails to show he suffered prejudice. A.M. explained that Q.W. merely wrote the letter for him because A.M. could not write. Defense counsel cross-examined A.M. at length about the letter, and A.M. was quite clear that he gave the information contained in the letter about murders he witnessed to Q.W. to have him make a record of the facts. Defendant thus fails to show that his attorney erred or prejudiced him in failing to object to the testimony of A.M. and the information contained in the letter.
| i3Finally, Defendant complains he received ineffective assistance because his attorney failed to cross-examine State’s witness A.D.A. Martin, who testified that the State brought charges against Defendant for this murder in 2005; however, because witnesses refused to testify, the case was dismissed. A.D.A. Martin also recounted that Defendant was re-indicted on this charge in 2013. Defendant main *655 tains defense counsel should have cross-examined A.D.A. Martin and/or impeached his testimony “with the suppression of Brady material from the jury that the charges [were] brought back up in 2013 to retaliate against John Chambers and Kenneth Halley because they were both arrested for accessory to manslaughter where a car hit and run killed a police [officer].”
The record provides no substantiation for Defendant’s claim that the State reinst-ituted charges in this case because Defendant was subsequently implicated in a hit and run accident. Moreover, at defense counsel’s urging, the district judge narrowly limited A.D.A. Martin’s testimony to address only the facts that he reviewed the refused murder, re-evaluated it, contacted the witnesses, presented it to the grand jury, and as a result, Defendant was re-indicted in this case. Defense counsel strategically chose not to cross-examine A.D.A. Martin, as to do so potentially would have opened the door to the District Attorney’s review of other crimes evidence and possibly highlighted Defendant’s guilt before the jury. In the absence of a showing of prejudice, we will not second-guess counsel’s strategic decisions. We thus find this unsupported claim meritless.
PRO SE ASSIGNMENT OF ERROR NUMBER 2
In a final pro se assignment of error, Defendant contends he was denied his full rights to an appeal because there is no transcript of the trial judge’s charge to jurors in response to the questions they raised during deliberations.
| ¾Art. I, § 19 of the Louisiana Constitution provides, in pertinent part, for the right to judicial review: “No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.” In felony cases, the recording of “all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel” is statutorily required. La. C.Cr. P. art. 843; see also State v. Landry, 97-0499, p. 3 (La. 6/29/99), 751 So.2d 214, 215 (criminal defendant has a right to a complete transcript of his trial proceedings, particularly where appellate counsel on appeal was not also trial counsel). However, to justify reversal of a conviction and the ordering of a new trial, an omission from the trial record must affect the “substantial rights of the accused.” La. C.Cr. P. art. 921. Thus, while an appellate court might find reversible error when material portions of the trial record are unavailable or incomplete, a “slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal” does not require reversal of a conviction. State v. Campbell, 2006-0286, p. 99 (La. 5/21/08), 983 So.2d 810, 872 (citations omitted). In some circumstances, an incomplete record may be adequate for appellate review and, therefore, a defendant is not entitled to relief on the basis of an incomplete record absent a showing that he was prejudiced by the missing portions of the record. Campbell, 2006-0286, p. 99, 983 So.2d at 872-873 (citations omitted).
While Defendant is correct there is no transcript of what the judge said in the jury room to the jury in response to its request to re-listen to E.M.’s trial testimony Island the audio recording of the 911 call, as well as the audio of R.R.’s statement, which was played at trial, the record does indicate what she intended to tell them:
Judge: Let the record reflect I have received a question from the jury. The *656 question is: “Testimony of [E.M.], 911 call, [R.R.’s] 4/5/05 statement audio.”
So, if it is all right with you-all [State and defense], I’m going to inform them they can’t have the audio of the testimony of [E.M.], obviously, and these audios, I will allow those to be played in the Jury room. I will have them set it up. Is that okay?
Halley’s Counsel: That is fíne. Chambers’ Counsel: Audios of—
Judge: The 911 call and [R.R.’s] statement that was introduced.
Halley’s Counsel: Yes.
Judge: And I am advising them they can’t have the audio of the testimony of [E.M.].
Halley’s Counsel: That is fíne. Chambers’ Counsel: Are you going to pull [the jury] out or are you just going to go—
Judge: I am just going to do in there. Chambers’ Counsel: Okay.
Halley’s Counsel: That is fine.
Likewise, when the jury posed a second question, the court responded:
Judge: Let the record reflect the jurors have a question. I’m reading it into the record. Both Defense counsels and State are present. “If ten people agree on a verdict can two people simply disagree by being undecided rather than the two people having a different verdict?”
Any objections to me going in there? * * *
My response to that—All that matters is that we need to have ten people alike. |g2Halley’s Counsel: Exactly. If you read the law to them, that is all you can say.
Judge: I am going to tell them that ten of you must agree.
Halley’s Counsel: Yes. That is all.
Judge: Any objections to me going in there and telling them that?
No defense objections were lodged.
We find that, based upon the record before this Court, the lack of a transcript regarding the judge’s instructions to the jury was inconsequential. As the record reflects, the trial judge reported how she intended to instruct the jury and indicated that she would advise them only as to the law, not the facts. Defendant thus fails to establish that his substantial rights were adversely affected. In any event, to the extent that defense counsel did not object to the district judge’s actions and the lack of a transcription of the same, Defendant waived any claim based on the lack of a transcript. La. C.Cr.P. art. 841. This assignment is meritless.
Having found no reversible error, Defendant’s conviction for second degree murder is hereby affirmed.
AFFIRMED

.Halley was charged along with Defendant in the same bill of indictment, and both men were tried jointly in Case No. 517-259, Section "I” of Criminal District Court for the Parish of Orleans. Each of the defendants, however, has filed a separate appeal. Halley’s appeal is docketed under 2016-KA-0713.

. Det. Rome had retired by the time this matter came to trial.

. Det. Rome identified photographs of the shooting scene at trial.

. In an effort to protect the privacy of the witnesses in this case, who testified under *646 fear of retaliation, they are referred to by their initials rather than their full names.

. An investigator with the District Attorney’s Office testified that they had been able to confirm that a person with the initials A.C. owned a blue Ford Explorer and that A.C. was the mother of L.C., a neighborhood friend known to most of the witnesses who testified.

. See also, La. C.Cr.P, art. 841(A)(“An irregularity or error cannot be availed of after ver-diet unless it was objected to at the time of occurrence.”)

. At best, Defendant appears to argue that had the evidence of the other crime been allowed in, his attorney could have argued that the witnesses’ testimony was being used in this case in order to "retaliate” against him for his involvement in the manslaughter case. Defendant offers nothing to support his claim of retaliation. Furthermore, even if Defendant believes the manslaughter case could have been used as impeachment evidence, clearly defense counsel made the strategic choice not to allow evidence of Defendant’s involvement in the manslaughter of a police officer to influence the jury's verdict.