STATE OF LOUISIANA     *     NO. 2024-KA-0194

VERSUS     *

    COURT OF APPEAL

JAMES PATTON     *

    FOURTH CIRCUIT

    *

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 554-450, SECTION "D"
Judge Kimya M. Holmes,
* * * * * *
**Judge Roland L. Belsome**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Karen K. Herman, Judge Nakisha Ervin-Knott)

**ERVIN-KNOTT, J., CONCURS IN THE RESULT.**

Holli Herrle-Castillo
Louisiana Appellate Project
P. O. Box 2333
Marrero, LA 70073-2333

    COUNSEL FOR APPELLANT

Jason Rogers Williams
District Attorney Orleans Parish
Brad Scott
Zachary M. Phillips
Orleans Parish District Attorney's Office
619 S. White Street
New Orleans, LA 70119

    COUNSEL FOR APPELLEE

**AFFIRMED.**
**DECEMBER 30, 2024**

Defendant appeals his March 21, 2023, conviction on the charges of manslaughter, felon in possession of a firearm, and obstruction of justice. He was convicted following a one-day jury trial. In Defendant's sole assignment of error, he asserts that the state presented insufficient evidence to sustain the conviction for manslaughter. Specifically, Defendant argues that the State failed to prove beyond a reasonable doubt that he was not acting in self-defense when he (admittedly) shot the victim.

***Procedural history and factual background***

The State filed an indictment on May 26, 2022 charging Defendant with one count of second degree murder of Russell Ricou ("Ricou"), obstruction of justice, and felon in possession of a firearm, violations of La. R.S. 14:30.1, 14:130.1, and 14:95.1, respectively.[1] Following a one-day trial, the jury found Defendant guilty and rendered the responsive verdict of manslaughter, and guilty as charged for obstruction of justice and felon in possession of a firearm. Many critical elements of the case are stipulated and recorded in the trial transcript as follows:

---

[1] Defendant did not allege or brief any errors regarding the convictions under La. R.S. 14:130.1, and 14:95.1, therefore any defenses in this regard are deemed waived. Moreover, there is evidence in the record lending strong support for both convictions.

1

The first stipulation states that James Patton and Russell Ricou, Jr. are the two individuals appearing on the video surveillance outside of the Three Legged Dog. … Two, the video surveillance recovered from the Three Legged Dog and provided in discovery is authentic and an accurate representation of the events and it will be published to the jury. No. 3, James Patton was in possession of a 9mm firearm. No. 4, James Patton fired the 9mm firearm once and fatally shot Russell Ricou in the head. Five, the coroner report, authored by Dr. Samantha Huber, is authentic and may be admitted into evidence and published to the jury. No. 6, Facebook messages provided in discovery from Mr. Patton and sent to Takisha Davis are authentic and may be admitted into evidence. No. 7, Selena Perez was outside of the Three Legged Dog on the night in question and was subsequently able to conduct a photographic lineup where she identified Mr. Patton as the man she was speaking to outside of the bar. No. 8, all 911 calls provided in discovery are accurate and authentic. And last, but not least, the recorded statement of Raven Davis provided in discovery is an authentic recording and is admissible.

The video referenced in the stipulation is shocking. It shows the victim and the accused in confrontational conversation outside a bar in the Quarter. Initially, nothing seems ominous in this encounter; however, a transcript of the audio reveals a stark change in the atmosphere. The video footage depicted Defendant first speaking to two women on the sidewalk in front of the Three Legged Dog bar; as the two women walked away, Ricou approached Defendant and began speaking to him. Defendant appeared to become visibly aggressive, getting very close to the victim's face. The transcript indicates that Defendant began threatening and cursing at Ricou. The victim began to retreat across the street when Defendant called him back to "show [him] something." When the victim returned, he asked Defendant, "Oh, you got a gun? You got a gun?" Defendant appeared to remain hostile, repeatedly stepping forward into the victim's space and yelling, "Hell yeah, try something, try something!" The victim then cocked his arm back and took a step toward Defendant, but before he made contact, a gunshot rang out and the victim immediately fell dead on the sidewalk at Defendant's feet.

*Discussion*

In an appeal of a conviction challenging the sufficiency of evidence, the court must determine whether the evidence, when viewed in the light most favorable to the state "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To overcome a plea of self-defense, the state bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *State v. De Gruy*, 2016-0891, p. 18 (La. App. 4 Cir. 4/5/17), 215 So.3d 723, 733.

A claim of self-defense is justified when the defendant proves that he reasonably believed that he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save himself from that danger. La. R.S. 14:20(A)(1). Under the facts in this case (i.e., the victim had raised his fist and started the forward motion to strike Defendant), some sort of defensive action might seem justified. However, the encounter between the two seemed to have ended until Defendant called the victim back to "show him something."

The defense of justification is unavailable to an offender who is the aggressor or who brings on a difficulty. La. R.S. 14:21; *State v. Abbott*, 2017-0016, p. 17 (La. App. 4 Cir. 6/14/17), 222 So.3d 847, 857. Because Defendant drew the victim back into the verbal confrontation after the victim had retreated, a rational fact-finder could reject Defendant's claim that he reasonably believed that getting hit by the victim would result in his death or great bodily harm, and that deadly force was necessary to prevent it. Applying the *Jackson* test to this case, a

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

***Errors patent***

A review of the record for errors patent reveals that the indictment bearing the signature of the grand jury foreperson is absent from the record. Louisiana Code of Criminal Procedure article 382(A) provides, in pertinent part, that the prosecution "for an offense punishable by life imprisonment shall be instituted by" grand jury indictment. The indictment must be indorsed as "a true bill," signed by the grand jury foreperson, and "returned into the district court in open court." La. C.Cr.P. art. 383. Because second-degree murder carries a mandatory life sentence, s*ee* La. R.S. 14:30.1 (B),[2] prosecution of Defendant therefore required it be initiated as set forth above. Nevertheless, this Court has held that the absence in the record of the signed indictment is a harmless error where the record otherwise reflects that a true bill was returned, and where the grand jury return of indictments reflects that the indictment was signed by the grand jury foreperson. *State v. Hawkins*, 2016-0458, p. 13 (La. App. 4 Cir. 5/17/17), 219 So.3d 1133, 1141; *State v. Chambers*, 2016-0712, p. 6 (La. App. 4 Cir. 2/15/17), 212 So.3d 643, 647-48.[3]

The docket master reflects that the State filed an indictment, noted as a "true bill," on May 26, 2022, and the list of Grand Jury Return of Indictments contained in the record includes the charges against Defendant and reflects that it was signed

---

[2] La. R.S. 14:30.1(B) provides, "Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."

[3] This Court has also held that "the failure of a defendant to object to alleged deficiencies in an indictment and the failure of a defendant to file a motion to quash the indictment on that basis waives those errors." *Hawkins*, 2016-0458, at p. 13, 219 So.3d at 1141, citing *State v. Porche*, 00-1391, p. 5 (La. App. 4 Cir. 2/14/01), 780 So.2d 1152, 1155. Here, Defendant did not lodge any objections on the basis of a deficient indictment, nor did he file a motion to quash the indictment, thus any error on that basis would arguably be waived.

by the grand jury foreperson.  Furthermore, the transcript of Defendant's arraignment reflects that the district court read the indictment in open court and noted expressly that the indictment was a "true bill," and that each count was "signed by the grand jury foreperson." Accordingly, the absence in the record of the signed indictment appears harmless in these circumstances.

For all the reasons above, we affirm Defendant's convictions and sentences.

**AFFIRMED.**